IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDER S. SPIRES                    :              CIVIL ACTION

        v.                             :

CAROLYN W. COLVIN,                     :
Acting Commissioner of Social Security
Administration                         :              NO.     15-920

### REPORT AND RECOMMENDATION

THOMAS J. RUETER
United States Magistrate Judge                        November 5, 2015

        Plaintiff, Alexander S. Spires, filed this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("Act").

        Plaintiff filed a Brief and Statement of Issues in Support of Request for Review

("Pl.'s Br.") and defendant filed a Response to Request for Review by Plaintiff ("Def.'s Br.").

For the reasons set forth below, this court recommends that plaintiff's Request for Review be

**DENIED**.

## I.      FACTUAL AND PROCEDURAL HISTORY

        Plaintiff filed an application for benefits on August 16, 2011 alleging disability

since December 31, 1999, due to post traumatic stress disorder ("PTSD").[1]  The claim was

denied initially on December 8, 2011.  (R. 33, 67-68, 81-84, 146-47.)  Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on April 22, 2013

_____

[1]        Plaintiff's date last insured is December 31, 2003.  (R. 22.)

before ALJ Alan Sacks.  (R.  27-61, 90-91.)  Plaintiff, represented by counsel, and Steve

Gumerman, a Vocational Expert ("VE"), testified at the hearing.  Id.  In a decision dated June 3,

2013, the ALJ found that plaintiff was not disabled and therefore not entitled to receive benefits.

(R. 22-26.)

        The ALJ made the following findings:

    1.     The claimant has failed to meet his burden of proving that he did not
          engage in substantial gainful activity after the alleged onset date.

    2.     The claimant has no severe impairment as of the alleged onset date and
          date last insured.

    3.     The claimant has not been under a "disability" as defined in the Social
          Security Act, at any time through the date of the date of the decision.

(R. 26.)

Plaintiff filed a request for review of the decision of the ALJ that was denied by

the Appeals Council on December 18, 2014; the ALJ's decision became the final decision of the

Commissioner.  (R. 1-6.)  Plaintiff now seeks judicial review of the ALJ's decision pursuant to

42 U.S.C. § 405(g).

## II.    <u>STANDARD OF REVIEW</u>

The role of this court on judicial review is to determine whether there is

substantial evidence in the record to support the Commissioner's decision.  <u>Jesurum v. Sec'y of</u>

<u>United States Dep't of Health and Human Serv.</u>, 48 F.3d 114, 117 (3d Cir. 1995).  Substantial

evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) (quoting <u>Consol. Edison Co.</u>

v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence.  Jesurum, 48 F.3d at 117.  This court may not "weigh the evidence nor substitute its conclusions for those of the factfinder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993).  As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986), cert. denied, 482 U.S. 905 (1987).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment.  42 U.S.C. § 423(d)(5).  A claimant satisfies this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979).  Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled."  This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience.  20 C.F.R. § 404.1520.

## III.   BACKGROUND

### A.   Testimony of Plaintiff, April 22, 2013

Plaintiff was born on May 31, 1950 and was sixty-two years old at the time of the administrative hearing.  Mr. Spires indicated that he had gone to college, but did not state if he had graduated.  (R. 35.)  Plaintiff testified that he lived alone, was able to prepare meals, wash dishes, do laundry, shop, and take out the trash.  (R. 40-41.)  He also was able to take care of his personal hygiene.  (R. 41.)  Plaintiff ate at restaurants a few times per month and utilized public transportation.  Plaintiff occasionally attended church services but did not speak to any attendees or participate in any church activities.  He did not attend movies or concerts.[2]  (R. 43.)  He

---

[2]      Plaintiff had no friends; he explained that he did not like to be around people because he thought they were talking about him or planning to hurt him.  (R. 42, 44.)  He also had difficulty interacting with people because he easily became violent if provoked.  (R. 45-46.)  Plaintiff described an altercation he had with another shopper in a supermarket:

> Well, when I have a problem with someone, and I see that I can't walk away from it, then I just–and in the supermarket, I was in there with my shopping cart making a right turn, and there was a guy who made a strong gesture.  Our shopping carts hit, and he called me a name, and he hit me right in the supermarket.  And usually–I buy a lot of canned goods, three for a dollar, and I took the–one of my canned goods, and when he hit me, and busted him in his eye.

watched television but did not read.  Id.  He consumed two to three beers in a month, but did not

take any illegal drugs.  (R. 47.)

        The ALJ asked plaintiff the following question: "All right.  When's the last time

when you worked for pay, whether full-time, part-time, anything at all?  Yeah, over-the-table,

under-the-table, it doesn't matter."  (R. 35.)  Plaintiff maintained that he had not worked for pay

since 2007 or 2008.  At that time, he washed cars and cleaned at a church approximately four or

five hours per week; he earned sixty or seventy dollars per month.[3]  (R. 35-36.)  He left that job

due to:  "Violence.  Around other people who are knuckleheads, and violence."  (R. 55.)  Prior to

2007 or 2008, plaintiff had not worked since 1999.  (R. 36.)  In the 1990s, plaintiff worked as a

photographer.  He did not recall if he worked during the eighties.  He explained that he took

"some very heavy medication, and to me the–certain things I could go back and remember, but

other times–."  (R. 36-37.)  When the ALJ specifically asked plaintiff whether he sought

employment from 1999 onward, plaintiff stated that he did not remember.  (R. 38-39.)  At the

time of the administrative hearing, plaintiff received disability benefits from the Veterans'

Administration.  (R. 40.)

        Plaintiff was questioned about his ability to perform a job where he could work

independently for the majority of the time, or be around only a few people.  Additionally, his

supervisor would check up on him only once or twice per day.  Plaintiff responded:

---

(R. 45.)

    [3]     Plaintiff explained that he was unable to work more than five hours per week
during that period because:  "It's, like, it's not all that they were offering.  I–it's just that, when I,
I'm at one place too long, I end up having problems.  So, it wasn't wanting– that that's all I
wanted to do."  (R. 38.)

If the boss say something to me, and I'm–tell you–and if it's something that I don't like, then he should not come around me anymore.

I don't like, I don't–if he has a bad day, he's going to make me have a bad day, so I, I really don't want him to say anything to me.  And the reason I try to stay around–away from people is because–even my psychologist wouldn't let me join any Veteran's groups at the VA because she knows my personality–and she talks with me all the time about why it's not a good idea for me to join groups, because she knows that–she says that I'm too violent.  And to answer your question about people, I think it would be probably the best to, to just leave me sort of, like, on an island by myself, and I'm happy.

(R. 48-49.)  He did not think he could work as a photographer because of his inability to work with people.[4]  (R. 51-52.)

Plaintiff usually was depressed; his mood "switches up," and he experienced mood swings.  (R. 46.)  He was prescribed medication to control these fluctuations, and also to control his anxiety.  (R. 50-51.)  He had difficulty sleeping; he maintained that he slept for "15 minutes, 10 minutes.  Sometimes I don't go to sleep for three days, four days."  (R. 42.)  He slept on lawn chairs in his living room.  He checked his front door every ten or fifteen minutes to make sure it was locked.  (R. 42, 45.)  Plaintiff testified that his anger and aggression issues surfaced upon his return from Vietnam.  (R. 53.)  Since that time, he claimed he had been in

---

[4]     The ALJ asked plaintiff whether he could photograph nature.  In response to that question, plaintiff replied:

And what's–what would be the purpose, Judge.  You know, I will say this, when I came in you were, if you will–I'll say, that you remind–do you remember Mr. Rogers?  You came in like Mr. Rogers, and now you a pretty tough guy.  Smile like Mr. Rogers, and now you are Captain Kangaroo and pretty choppy now.  I mean, I feel like you're throwing M50s at me now.

(R. 50-51.)

many physical and verbal altercations.  He maintained that he was "banned" from certain stores

due to his anger issues.  (R. 53-54.)

**B.**   **Testimony of VE, Steve Gumerman, April 22, 2013**

The VE characterized plaintiff's past job of photographer as light and skilled.  (R.

56.)  The ALJ posed the following hypothetical to the VE:

> For each of these, assume someone of this claimant's age, education, and other
> relevant background, and I'll presume that your answer to each is consistent with
> the DOT unless you tell me otherwise.  So, we'll say simple, routine tasks; low
> stress, which I'll define for you in just a moment; and low contacts with others,
> which I will also define–by others I mean colleagues, supervisors–and finally, no
> contact with the public.  Now, by low stress, I mean work that involves no
> decision making beyond that required for simple, routine tasks; no unusual risks
> or dangers such as those faced by police officers and firemen; and also slow-paced
> and low production rules but still consistent with full-time work.  By low contacts, I
> mean only occasional, that's up to a third of the day, of direct face-to-face
> dealing with people.  That's having a conversation in person such as you and I are
> having now, or working together as we all have this morning.  I'm not referring to
> indirect means of communication such as speaking on the telephone, or
> exchanging email on a computer, or sending memos back and forth.  And finally,
> our category of occasional, as I said to you, is up to a third of the time, but within
> that range of 33 percent, I'm hoping you'll look at the occupations, if any, that are
> down at the minimum degree of contact that's still within the category.  Any
> occupations–any of his past work available, I should say?

(R. 56-57.)  The VE stated that an individual would be unable to perform any of plaintiff's past

jobs with the limitations set forth in the aforementioned hypothetical.  Id.  The VE opined,

however, that the hypothetical individual would be able to perform the jobs of cleaner and sorter,

which are light, unskilled positions.  The VE testified that an individual who was unable to

tolerate even low stress as defined by the ALJ would be unable to perform the tasks associated

with any occupation.  The VE added that an individual who would be unpredictable in pace,

attendance and schedule would be unable to perform any job, as would a person who was limited to having no contact at all with coworkers or supervisors.  (R. 57-58.)

IV.    **DISCUSSION**

Plaintiff avers that substantial evidence does not support the ALJ's ultimate conclusion that plaintiff was not disabled.  (Pl.'s Br. at 5-10.)  Specifically, plaintiff maintains that the ALJ erred when he:  (1) found plaintiff engaged in substantial gainful activity after his alleged onset date; and (2) found no severe impairment at step two of the sequential evaluation process.  Id.  Defendant counters that the ALJ set forth substantial evidence to support his conclusions.  (Def.'s Br. at 5-21.)

A.    **ALJ's Step One Analysis**

Social security claims are evaluated in accordance with the five-step sequential process set forth in 20 C.F.R. § 404.1520.  The first two steps involve "threshold determinations" for evaluating whether an individual possesses a qualifying disability.  Newell v. Comm'r of Soc. Sec. Admin., 347 F.3d 541, 545 (3d Cir. 2003).  In step one, the social security administration determines whether a claimant has engaged in substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(b); Burnett v. Comm'r Soc. Sec. Admin., 220 F. 3d 112, 118 (3d Cir. 2000).  Substantial work activity "involves doing significant and productive physical or mental activities," even if on a part-time basis.  20 C.F.R. § 404.1572(a).  Gainful work activity includes "the kind of work usually done for pay or profit," regardless of whether profit materializes.  20 C.F.R. § 404.1572(b).  Personal care activities such as "household tasks, hobbies, therapy, school attendance, club activities, or social programs," generally fail to constitute SGA.  20 C.F.R. § 1572(c).

The claimant bears the burden of demonstrating the absence of SGA.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination); Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (same).  A failure to meet this burden results in the denial of benefits.  Newell, 347 F.3d at 545 (citation omitted).

Plaintiff argues that the ALJ "erred in finding that the Plaintiff engaged in substantial gainful activity after the alleged onset date."  (Pl.'s Br. at 2-4.)  Plaintiff maintains, inter alia, that the ALJ failed to afford proper credit to plaintiff's sworn testimony regarding his employment history, and improperly relied upon a "lone statement" in a medical record to reject plaintiff's sworn testimony.  Id.  Defendant counters that substantial evidence supports the ALJ's step one analysis.  (Def.'s Br. at 6-14.)

In his decision, the ALJ relied on medical records that demonstrated plaintiff performed SGA through 2005 and possibly beyond that date, subsequent to both plaintiff's alleged onset date of disability, December 31, 1999, and his date last insured, December 31, 2003.  Specifically, the ALJ relied on Exhibit 8F in the record.  Exhibit 8F refers to plaintiff's treatment notes at the VA.[5]  These records illustrate that on December 4, 2007, plaintiff's clinical psychologist, Saundra F. Noce, Ph.D., reported:  "Veteran is self-employed as a photographer/printer and has been for the last 10 years."  On January 8, 2008, VA treatment notes from Dr. Noce state:  "Veteran indicated that he enjoys his job, working between 30 and 60 hours per week as a printer/photographer."  The exhibit further reveals that on July 21, 2008, plaintiff's VA treatment notes stated that he works as a photographer, primarily for churches.  On

_____

[5]        Exhibit 8F also references other exhibits, including 4F and 6F.  (R. 1113.)

July 7, 2009, Dr. Noce reported that plaintiff was mostly keeping to himself, "except for his work as a photographer."  (R. 23-24, 425, 438-39, 555, 756, 804, 816-17, 906, 1109-10, 1113.)

Exhibit 8F further indicates that on March 15, 2010, plaintiff completed a Compensation and Pension Examination with the VA.  (R. 514-25, 762-69, 1033-44.)  During this examination, plaintiff identified his usual occupation as that of photographer.  He further indicted that he was "currently employed," working "full-time," and reported that the duration of his employment was "10 to 20 years."  Moreover, he indicated that in the previous twelve months he had lost only twelve weeks of work.  (R. 23-24, 523, 767, 1113, 1042.)  On December 2, 2010, plaintiff completed an additional Compensation and Pension Examination, during which time he indicated that he "worked as a freelance photographer doing weddings and other functions," but had not worked for two to five years.  (R. 23, 459, 579, 991, 1113.)

As set forth above, the ALJ based his step one analysis on numerous references in the record, wherein plaintiff himself indicated, at various times, that he was "currently employed," working "full-time," working between thirty and sixty hours per week, and lost only twelve weeks of work during a certain twelve month period.  (R. 23-24, 438, 523, 767, 816, 1109, 1042.)  Medical records referenced in Exhibit 8F lend further support to the ALJ's conclusions.  Plaintiff indicated to his psychologist that he was self-employed, working as a photographer and had been doing so for the last ten years.  (R. 23-24, 425, 439, 804, 817, 906.)  Furthermore, the December 2, 2010 Compensation and Pension Examination report revealed that plaintiff was unemployed at that time, but that he indicated that this was the case only for the previous two to five years.  By his own admission, plaintiff was working well beyond his date

10

last insured.  (R. 23-24, 459, 579, 991, 1113.)[6]  As set forth above, the ALJ did not rely on a

"lone statement in a medical record" to support his determination.

        Plaintiff raises additional allegations of error with respect to the ALJ's step one

determination.  Plaintiff avers that the ALJ failed in his duty to question him regarding the

medical documentation in the record.  Plaintiff reasons that if the ALJ had pointed out specific

medical records (presumably Exhibit 8F, and the other exhibits to which the exhibit refers)

during the administrative hearing regarding his employment, plaintiff could have provided

"sworn testimony as he did in the certification provided to the Appeals Council" clarifying the

---

[6]     Other evidence in the record not specifically referenced by the ALJ with respect to his step one analysis also supports the ALJ's finding that plaintiff worked beyond his disability onset date and date last insured.  A June 2008 notation of Dr. Noce's states that plaintiff continued to work as a photographer as he had done most of his working life.  Dr. Noce's records repeatedly represented that plaintiff continued to work as a photographer throughout 2008 and 2009.  (R. 391, 410, 414, 416, 540, 565, 567, 760, 1061, 1081, 1085, 1087.)  The court is aware that plaintiff's earnings record in the file does not list earnings from 2000 to 2003.  (R. 167.)  However, an ALJ is not limited to the earnings calculation in his consideration of the facts relating to SGA.  Pursuant to 20 C.F.R. § 404.1574(b)(3)(ii), an ALJ may consider other information "if there is evidence indicating that you may be engaging in substantial gainful activity or that you are in a position to control when earnings are paid to you or the amount of wages paid to you."  Id.  VA records reveal that plaintiff was engaging in SGA.  In a November 27, 2009 application for compensation completed for the VA, plaintiff indicated that he had been self-employed as a photographer from January 1, 1995 to the present, earning $11,000 annually, an amount in excess of the amount necessary to demonstrate SGA for the years 2000 to 2003.  (R. 853.)  See also 20 C.F.R. § 404.1572.  Additionally, plaintiff submitted a detailed statement of earnings to the VA on November 1, 2010.  The statement was signed and certified that "the statements in the application are true and complete to the best of my knowledge and belief."  (R. 292-93, 603-04.)  In the statement, plaintiff represented that he earned $600 per month from April 2002 to September 2002 working with cameras, $600 per month from April 2003 to February 2004 printing, $500 per month from November 2003 until March 2004 making repairs, $400 per month from May 2004 to August 2004 making calendars, and $600 per month from January 2005 to May 2005 printing.  Id.

medical records.[7]  (Pl.'s Br. at 3.)  As set forth above, the ALJ did attempt to question plaintiff

about his work history at the hearing, and plaintiff only recalled working for a few hours per

week around 2007 or 2008.  (R. 35.)  When specifically asked if he looked for work from 1999

on, plaintiff indicated that he did not remember.  (R. 39.)  The ALJ addressed this lack of clarity

on plaintiff's part, and related in his decision: "When I asked the claimant at the hearing about

any possible work since the alleged onset date, he said that medication often affects his memory

and that he could not recall any such work except the part-time job in 2007 and 2008."  (R. 23.)

The ALJ provided plaintiff with an opportunity to explain any past employment history, and

plaintiff did not avail himself of the opportunity to do so.  Moreover, counsel informed the ALJ

that he had reviewed the exhibit file, and had no objection to the admission of any of the medical

evidence.  (R. 30.)  Counsel neglected to seek timely clarification from plaintiff regarding the

notations in the medical records relating to employment.  See 20 C.F.R. § 404.1740(b)(1) (stating

that counsel is "obligat[ed] to assist the claimant in bringing to [the Administration's] attention

everything that shows that the claimant is disabled").  See also Turby v. Barnhart, 54 F.App'x

---

[7]        As set forth herein, plaintiff did certify in a statement of earnings provided to the
VA that "the statements in this application are true and complete to the best of my knowledge
and belief," and that he made varying income between 2002 and 2005.  The form further
indicates that the "law provides severe penalties which include fine or imprisonment or both for
the willful submission of any statement or evidence of a material fact, knowing it to be false or
for the fraudulent acceptance of any payment to which you are entitled."  (R. 293, 604.)  Plaintiff
also represented to the VA in an Application for Compensation dated November 27, 2009 that he
was self-employed as a photographer from 1995 until 2009 and earned $11,000 annually.  (R.
853.)  Moreover, to the extent plaintiff is attempting to rely on his affidavit to the Appeals
Counsel to refute the VA medical records, this may not be considered by this court.  This
evidence was first submitted to the Appeals Council and was not before the ALJ.  See Matthews
v. Apfel, 239 F.3d 589, 593-95 (3d Cir. 2001) (claimant cannot rely on evidence that was not
before the ALJ unless it was new and material, and there was good cause for not previously
presenting such evidence).

118, 122-23 (3d Cir. 2002) (not precedential) (holding that "counsel was responsible for ensuring

that the ALJ was aware of any facts favorable to [claimant's] claim for benefits").

        Finally, plaintiff correctly notes that the ALJ did not specifically analyze

plaintiff's SGA with respect to 20 C.F.R. § 404.1575(a), which relates to self-employment.

However, the ALJ did reference other exhibits that discussed plaintiff's self-professed work

history. As set forth above, plaintiff represented to medical providers that he worked thirty to

sixty hours per week as a photographer, worked full-time, missed only limited time, etc. (R. 425,

438, 804, 816, 906, 1109, 1113.) These assertions appear to satisfy the criteria of 20 C.F.R.

404.1575(a)(1), relative to the hours, skills, duties and responsibilities discussed in the

regulation. Moreover, even assuming arguendo that the ALJ was remiss in his step one analysis,

and plaintiff met his burden at step one, the ALJ nevertheless proceeded to step two of the

sequential analysis and ultimately concluded that plaintiff did not have an impairment or

combination of impairments that significantly limited his ability to perform basic work activities

during the relevant period.

        **B.**     **ALJ's Step Two Analysis**

        Plaintiff avers that the ALJ erred when he concluded that plaintiff did not have a

severe impairment or combination of impairments at step two of the evaluation process. (Pl.'s

Br. at 5-10.) Defendant asserts that substantial evidence supports the ALJ's analysis at this step.

(Def.'s Br. at 14-21.) As set forth above, plaintiff has the burden of demonstrating that he has a

severe impairment at step two of the evaluation process. See Bowen v. Yuckert, 482 U.S. at

146-47. An impairment, or combination of impairments, is not severe if it does not significantly

limit a claimant's physical or mental ability to do basic work activities.[8]  20 C.F.R. §

404.1521(a).

Initially, the ALJ found that plaintiff did not sustain his burden at step one of the

evaluation process.  However, the ALJ gave plaintiff the benefit of the doubt at that juncture and

related:

> Moreover, even if I were to presume that he [plaintiff] did not engage in any
> substantial gainful activity from 1999 to 2003, the result would not change
> because, as set forth below, the record does not establish any severe impairment
> during that time.

(R. 24.)  The ALJ proceeded to step two of the evaluation process and ultimately concluded that

during the relevant period, plaintiff did not have an impairment or combination of impairments

that significantly limited his ability to perform basic work activities.  He concluded that the lack

of medical evidence supporting plaintiff's complaints of a disabling condition, coupled with the

fact that plaintiff indicated that he engaged in SGA during the relevant period, supported his

ultimate conclusion that plaintiff's impairment did not render him disabled.  (R. 24-26.)

An individual is disabled if his impairments are severe enough that not only is he

incapable of performing his past work, but he also is incapable of engaging in "any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(1)(A).  "An

individual shall not be considered to be under a disability unless he furnishes such medical and

other evidence of the existence thereof as the Commissioner of Social Security may require."  42

---

[8]      Examples of basic work activities include functions such as:  walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b)(1)-(6).

U.S.C. § 432(d)(5)(A).  The claimant also must establish that the onset date of disability occurred

prior to the expiration of the claimant's insured status.  20 C.F.R. § 404.131.

      Plaintiff alleged an onset date of December 31, 1999; his date last insured was

December 31, 2003.  As set forth by the ALJ, there was a dearth of medical treatment notes in the

record pertaining to the insured period.  There are a few notes from the VA prior to plaintiff's

alleged onset date that note that plaintiff was anxious and nervous; however, the notes further

revealed that he possessed a good level of functioning between 1968 and 1970.  (R. 881, 904,

906.)  Additionally, the majority of plaintiff's treatment notes were from 2007 and beyond.  As

the ALJ indicated:

> The critical issue is the claimant's ability to work as of the alleged onset date.
> Although the record includes some treatment notes from 1969 and 1970, and
> voluminous such notes since 2008, it does not include any such notes for the
> intervening years (Exhibits 3F-6F).  In the absence of any relevant evidence
> within seven years of the alleged onset date, and five years of the date last insured,
> the claimant has failed to establish any severe medical impairment as of those
> dates.

(R. 25.)  The ALJ concluded that the "record does not contain any treatment evidence after 1970

or before 2007."  Id.  Moreover, plaintiff's counsel also acknowledged that "the treating records

start approximately 2007.  That's when the claimant was going to the VA Hospital."  (R. 30.)

Thus, the ALJ found that plaintiff did not sustain his burden of furnishing "such medical and

other evidence" of a severe impairment that existed during the relevant period and rendered

plaintiff disabled.  (R. 25.)

      Plaintiff "was required to demonstrate the existence of a mental [or physical]

impairment that precluded [him] from performing substantial gainful activity for a continuous

period of twelve months prior to the expiration of [his] insured status." <u>Kelley v. Barnhart</u>, 138

F.App'x 505, 507 (3d Cir. 2005) (not precedential).

> Regardless of whether there was an onset of [a condition] during the relevant time period, the mere existence of an underlying medical condition prior to the date last insured is insufficient at Step Two without evidence that the condition significantly limited his ability to do basic work activities during the insured period.

<u>Kirkland v. Colvin</u>, 2015 WL 5732178, at *1 n.1 (W.D. Pa. Sept. 30, 2015) (citing <u>Perez v.</u>

<u>Comm'r Soc. Sec.</u>, 521 F.App'x 51, 54-55 (3d Cir. 2013) (not precedential)).[9]  In addition to

relying on the lack of medical records relating to the appropriate period, the ALJ further noted

that by his own admission, plaintiff worked as a photographer during the relevant period and

carried out basic work activities.  This, in combination with other factors, supports the ALJ's

finding that plaintiff's diagnosis alone did not result in the required degree of functional

limitation resulting from plaintiff's PTSD during the relevant period.

Plaintiff also alleges that "the ALJ failed to apply SSR 83-20, and rejected Dr.

Opass' detailed narrative report at Step Two."  (Pl.'s Br. at 5-6.)  However, the ALJ did consider

the opinion of Edward Opass, M.D., a physician who examined plaintiff prior to the

administrative hearing.  The ALJ related:

---

[9]      In <u>Perez</u>, a claimant appealed her denial at step two of the sequential evaluation process.  In that case, claimant alleged disability as of January 31, 1987; her date last insured was June 30, 1988.  Although she was diagnosed with her alleged disabling condition in 1985, she did not receive treatment until 1991 or 1992, three or four years after her date last insured.  The Third Circuit found that although diagnosed prior to her date last insured, claimant provided no evidence that her condition limited her ability to perform basic work activities during the relevant period; thus, the court concluded that her impairment was not severe.  Additionally, claimant did not allege that she was treated during the relevant period, or that she was prevented from seeking treatment during that period.  <u>Perez v. Comm'r Soc. Sec.</u>, 521 F.App'x 51, 54-55 (3d Cir. 2013) (not precedential).  This case is analogous to the case at bar.

Here, however, no treating source has offered an opinion on the claimant's ability to work as of the alleged onset date or his date last insured.

Instead, Dr. Edward Opass, who examined the claimant shortly before the hearing, has offered his opinion that the claimant probably has been unable to work since the date last insured (Exhibit 9F). That opinion, however, does not purport to apply to the alleged onset date of December 31, 1999. Moreover, Dr. Opass examined the claimant only once and otherwise based his opinion on the record as described above, which does not indicate whether the claimant was unable to work in 1999. Indeed, based on statements from the claimant at his examination, Dr. Opass seemed to assume that the claimant has not worked steadily since 1970, which to him supported an inference that his underlying mental impairments had significantly interfered with his functioning for decades. The earnings report, however, shows income from 1993 to 1998 at the level of substantial gainful activity while treatment notes, as described above, indicate work even after 1999. Moreover, the claimant worked then as a photographer, an occupation that required him to engage in the sort of extensive social contact that Dr. Opass' opinion would preclude. I do not rely on this speculative opinion.

(R. 25.) As set forth above, the ALJ proffered his reasons for discounting the opinion of Dr. Opass. The ALJ relayed that the opinion does not relate to the relevant period between plaintiff's alleged disability onset date and his date last insured. Additionally, the ALJ noted that Dr. Opass made no findings regarding plaintiff's abilities prior to his date last insured of December 31, 2003. A claimant must establish disability prior to the expiration of his insured status. See 20 C.F.R. § 404.131(a); Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). Thus, evidence that does not relate to the period between the alleged disability date and the date last insured is not probative. See i.e., Beety-Monticelli v. Comm'r Soc. Sec., 343 F.App'x 743, 746 (3d Cir. 2009) (court determined that ALJ reasonably concluded physician's opinion had no probative value because it did not shed light on claimant's condition prior to expiration of insured status) (not precedential). The ALJ pointed out that Dr. Opass apparently assumed plaintiff had not worked steadily since 1970. (R. 25.) The ALJ concluded that Dr. Opass based his opinion on a faulty

premise–i.e., that plaintiff was unable to work since 1970, as this assumption was in conflict with the evidence in the record.  Id.  The ALJ further noted that Dr. Opass examined plaintiff in 2013, some ten years after plaintiff's date last insured.[10]  (R. 25, 34.)  This court finds that substantial evidence supports the ALJ's analysis of the opinion of Dr. Opass.

        Plaintiff argues generally that the ALJ failed to properly SSR 83-20 at step two with respect to "slowly progressive impairments."[11]  (Pl.'s Br. at 7-9.)  The ALJ considered plaintiff's impairment prior to his alleged onset date, and also during the relevant period.  He noted that although plaintiff received some treatment from the VA in 1968 and 1970, there was no indication that plaintiff's condition was disabling prior to the expiration of his insured status.

---

[10]        Plaintiff asserts that the ALJ failed to give proper weight to the fact plaintiff had a military service connected disorder that eventually prompted the VA to award plaintiff disability benefits.  (Pl.'s Br. at 6-7.)  However, as the ALJ noted:

> VA disability determinations, however, are not binding in Social Security disability cases.  Rather, because of the different applicable standards, these ratings have limited value in disability cases.  Cf. Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (workman's compensation determinations).  Moreover, the current 100% rating sheds no light on the claimant's ability to work in 1999 or 2003 and even the 70% rating in 2009 does not necessarily imply the inability to work full-time in any job.

(R. 26 n.1.)  The ALJ offered his rationale for declining to assign controlling weight to plaintiff's VA disability rating.  The ALJ noted the different standards of disability within different agencies.  Furthermore, the ALJ asserted that the VA rating was effective November 27, 2009, six years after plaintiff's date last insured, and did not make any findings relating to the relevant time period from December 31, 1999 through December 31, 2003.  (R. 275-83.)  This court finds that substantial evidence supports the ALJ's decision to give little weight to the VA's delayed award of benefits.

[11]        Plaintiff does not argue that the ALJ should have consulted with a medical expert to determine plaintiff's onset date.  (Pl.'s Br. at 6-10.)  Accordingly, the court deems this argument waived.  See Colgan v. Astrue, 2012 WL 752083, at 1 n. 1 (E.D. Pa. Mar. 7, 2012) ("An issue is waived unless a party raises it in its opening brief.") (citation omitted).

The record reveals that despite references to anxiety and nervousness, plaintiff had "a good level of functioning" during that time.  (R. 881, 904, 906.)  Treatment notes further illustrated that plaintiff continued to work during the relevant time period, despite his averments of disability. Moreover, the majority of his treatment began after 2007, four years after his date last insured; counsel for plaintiff acknowledged this at the hearing.  (R. 30.)  For the reasons set forth above, this court concludes that substantial evidence supports the ALJ's step two finding.

A reviewing court may not set the Commissioner's decision aside if it is supported by substantial evidence, even the court would have decided the factual inquiry differently.  Hartranft v. Apfel, 181 F.3d at 360.  See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); see also Burns, 312 F.3d at 118 ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder.").  The "question is not whether we would have arrived at the same decision; it is whether there is substantial evidence supporting the Commissioner's decision." Donatelli v. Barnhart, 127 F.App'x 626, 630 (3d Cir. 2005)(not precedential).  The ALJ set forth substantial evidence to support his conclusion that plaintiff had failed to meet his burden at steps one and two of the sequential analysis.

## V.   **CONCLUSION**

After careful review of the evidence in the record, and for the reasons set forth above, this court finds that substantial evidence in the record supports the ALJ's conclusion that plaintiff is not disabled.  Accordingly, the court makes the following:

## R E C O M M E N D A T I O N

AND NOW, this 5th day of November, 2015, upon consideration of plaintiff's

Brief and Statement of Issues in Support of Request for Review and defendant's response

thereto, it is respectfully recommended that plaintiff's request for review be

**DENIED**.  The parties may file objections to the Report and Recommendation.  <u>See</u> Loc.R. Civ.

P. 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


<u>Thomas J. Rueter</u>
THOMAS J. RUETER
United States Magistrate Judge

20

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXANDER S. SPIRES                  :                  CIVIL ACTION

     v.                                      :

CAROLYN W. COLVIN,                   :
Acting Commissioner of Social Security
Administration                       :                  NO.    15-920

# <u>O R D E R</u>

AND NOW, this    day of            , 2015, upon consideration of Plaintiff's Brief

and Statement of Issues in Support of Request for Review and defendant's Response to Request

for Review of Plaintiff, and after review of the Report and Recommendation of United States

Magistrate Judge Thomas J. Rueter, it is hereby

## O R D E R E D

1.      The Report and Recommendation is APPROVED and ADOPTED;

2.      Judgment is entered affirming the decision of the Commissioner of the

Social Security Administration and the relief sought by plaintiff is DENIED; and

3.      The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

_____

WENDY BEETLESTONE,      J.